**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHOUN RANDOLPH, | : | |
| | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.    2:22-cv-01683 |
| | : | |
| SUPERPAC, INC., et al.        : | : | |
| | : | |
| Defendant. | : | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendants, SuperPac, Inc. ("SuperPac") and Lisa Faber ("Faber"), by and through their attorneys, submits the following Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants' Motion should be granted and Plaintiff's Complaint should be dismissed in its entirety with prejudice.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 4

PROCEDURAL BACKGROUND ................................................................................. 5

MATERIAL FACTS ....................................................................................................... 5

    Plaintiff's Short-Term Disability Leave and Stress Days ......................................... 6

    Bathroom Incidents ................................................................................................... 7

    SuperPac and Faber's Investigation into Bathroom Incidents ............................... 10

    Plaintiff's Termination ............................................................................................ 12

ARGUMENT ................................................................................................................. 13

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).....................................................14

*Celotex Corp. v. Catre*tt, 477 U.S. 317, 322, 327 (1986) ............................................................13

*Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 (D.N.J. 2019)....................................20

*Cohen v. Temple Physicians, Inc.,* 11 F.Supp.2d 733, 737 (E.D.Pa.1998)..................................19

*Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996)...................................19

*Dowling v. Citizens Bank*, No. 05-914, 2007 WL 2752178 (W.D. PA. Jan. 18, 2007)...............18

*EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015).....................................................20

*Ellison v. BHBC Northwest Psychiatric Hosp.,* No. 11-5106, 2013 WL 1482199 (E.D. Pa. Apr. 9, 2013)............................................................................................................................................18

*Gaul v. Lucent Techs.*, 135 F.3d 576, 580 (3d Cir. 1998)............................................................16

*Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012) .....................................20

*Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)..............................................................17

*Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013) ....................................................................................................................................................17

*Koller v. Riley Riper Hollin &* Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) ...............16

*Lawrence v. Nat'l Westminster Bank* N.J., 98 F.3d 61, 69 (3d Cir. 1996). ..................................14

*Marion v. City of Philadelphia,* 161 F.Supp.2d 381, 388 (E.D.Pa.2001)....................................19

*Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006) ........................................................18

*Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990) ....................................18

*See Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 761 (E.D. Pa. 2011).......................15

*Selvato v. SEPTA*, 143 F. Supp. 3d 257, 265-66 (E.D. Pa. 2015)................................................15

*Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) .....................................14

Stepp v. Fairpoint Commc'ns, Inc., CIV.A. 06-576, 2007 WL 4248559, at *8–9 (W.D. Pa. Nov. 30, 2007)..................................................................................................................................19

*Strain v. Univ. of Pittsburgh Med. Ctr.*, No. 04-1660, 2007 WL LEXIS 951490 (W.D. Pa. Mar. 27, 2007)....................................................................................................................................18

*Tielle v. Nutrition Grp.*, 810 F. App'x 160, 163 (3d Cir. 2020)..................................................20

*Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016) .....................................................20

## Statutes

29 C.F.R. pt. 1630 App. (2011) ...................................................................................................16

42 U.S.C. § 12102(1)....................................................................................................................16

## Rules

Fed. R. Civ. P. 56(c) .....................................................................................................................13

## I.    __INTRODUCTION__

Plaintiff's Complaint against SuperPac and Faber contains claims of race discrimination and retaliation under Title VII, Section 1981 of the Civil Rights Act ("Section 1981") and the Pennsylvania Human Rights Act ("PHRA") (Counts I-II, IV-VI and VIII), as well as claims of disability discrimination and retaliation under the Americans with Disabilities Act and PHRA (Counts III and VII). Plaintiff also raises a claim of aiding and abetting under the PHRA against Faber individually. Randolph cannot establish a viable claim under any of the counts against them.

Randolph's Complaint along with the record developed in this case, do not identify any evidence that is sufficient to establish an inference of racial discrimination. Instead, without any objective evidence suggesting race-based behavior, he alleges that a series of messes in the bathroom that he had to clean up during his shift as a Janitor at SuperPac are evidence of race discrimination. Put differently, Randolph is exclusively relying on his subjective impression of a series of otherwise typical events in the bathrooms at SuperPac which occurred on every shift to establish that he was being targeted simply because he is in a protected class. Additionally, Randolph's allegations presume that the SuperPac found evidence of racial discrimination and did nothing about it. However, the record demonstrates that after thorough investigation, SuperPac found no such evidence. Moreover, SuperPac has not replaced Randolph.

Randolph's disability discrimination claim is even more attenuated. Though Randolph claimed he was taking stress days covered under the ADA on April 27 and 28, 2021, he never disclosed a mental health condition that would qualify as a disability to SuperPac, nor did he request any accommodation as a result of any ongoing disabilities. Randolph contends that SuperPac and Faber denied this stress leave, but the record establishes that he was in fact granted the days off.

The ultimate reason for Randolph's termination on April 30, 2021 was the lack of need for his position along with his insubordination on a phone call with management. It was not because he took the stress days, or because he made complaints of racially motivated behavior.

The documents and deposition testimony all support these conclusions and form the basis for why Summary Judgment should be granted in favor of SuperPac and Faber, with Plaintiff's Complaint dismissed in its entirety.

## II.   <u>PROCEDURAL BACKGROUND</u>

On May 2, 2022 Randolph filed a Complaint against SuperPac and Faber, asserting violations of Title VII, Section 1981, the ADA, and the PHRA. *See,* ECF No. 1. SuperPac and Faber filed their Answer and Affirmative Defenses to the Complaint on July 25, 2022. *See*, ECF No. 4.  SuperPac and Faber now move for summary judgment on all of Randolph's claims.

## III.   <u>MATERIAL FACTS</u>

1.  Randolph was offered a position as a Janitor with SuperPac on April 30, 2020 and was brought on to clean and disinfect the plant because of COVID. *See* Exhibit C at 27:3-6; Exhibit Q (Offer Letter).

2.  His job responsibilities included, among other things, cleaning the bathroom facilities and breakroom facilities at SuperPac. *See* Exhibit C at 27:3-28:5 (Plaintiff's Deposition Transcript); Exhibit B at 29:7-10; 106:20-107:7 (SuperPac Manager of Human Resources, Lisa Faber's Deposition Transcript); and Exhibit D (Randolph's Job Description).

3. When he was hired and throughout the duration of his employment with SuperPac, Plaintiff worked the 3:00 PM – 11:00 PM shift. *See* Exhibit C at 27:16-19 and Exhibit B at 39:23-24.

### A. Plaintiff's Short-Term Disability Leave and Stress Days

4. Between November 14 and December 10, 2020, Plaintiff was out on Short Term Disability Leave. *See* Exhibit A at ¶18 (Plaintiff's Complaint).

5. The reasons cited by Plaintiff to SuperPac were: possible stroke, high blood pressure, high sugars. *See* Exhibit E at SUPERPAC 120-121 (November Texts between Plaintiff and Dale Thomas detailing he was on his way to the emergency room for numbness in his face); Exhibit F at SUPERPAC 56 (L. Faber Email about leave).

6. Plaintiff then returned to work on a part-time basis on December 10, 2020. *See* Exhibit A at ¶19.

7. He returned to work full-time without restriction on December 21, 2020. *See* Exhibit A at ¶18; Exhibit B at 169:12-170:1; Exhibit G (doctor's note clearing him to return to work).

8. At that point, SuperPac and Faber had no reason to think that the health issues that gave rise to this leave were ongoing. *See* Exhibit B at 61:2-4.

9. The record also shows that Randolph provided them with no information to that effect, and he has produced no medical record or expert report to that effect.

10. Then, on April 27 and 28, 2020, Plaintiff texted both his direct supervisor, Maintenance Manager Dale Thomas ("Thomas"), and Faber informing them that he was taking stress days because he thought he would have heard something about the resolution of the situation (referring to the bathroom incidents). See Exhibit E at SUPERPAC136-137; Exhibit C at 89:12-90:6.

11. He did not reference a disability, nor did he intend to. *See id.* Rather, he admitted during his deposition that "everyone coming to me about the situation […] was just very stressful. And I tried to express that to them and told them I needed, you know, a couple days away from it, away from the whole stressful situation." *See* Exhibit C at 89:12-90:6.

12. He also admitted that he did not see a doctor to confirm the alleged stress he was experiencing was related to any disabilities. *See* Exhibit C at 96:12-24.

13. Regardless, SuperPac allowed him to take those days off. *See* Exhibit B at 124:25-125:2.

   **B.  Bathroom Incidents**

14. SuperPac men's bathrooms have historically been messy and janitors on every shift clean up messes ranging from urine on the floor to paper towels around the bathroom to vandalizing the walls. *See* Exhibit H (SuperPac Production Supervisor and Assistant Manager of Print Department, Dan Holdsworth's Deposition Transcript at 31:18-32:22; Exhibit I at 14:17-15:10; 15:14-24; 17:20-22; 31:11-32:11 (SuperPac Janitor, Jeffrey Spungen's Deposition Transcript); Exhibit B at 47:9-14; Exhibit J at 48:13-49:2 (SuperPac Vice President and COO, Andrew Weir's Deposition Transcript); and Exhibit K (Notices of prior bathroom messes).

15. As a janitor at SuperPac, Plaintiff was no stranger to cleaning up messes and provided testimony that the usual conditions of the SuperPac bathroom could include cleaning urine off the floor, toilet tissue and toilet paper off the floor, and feces in or around the toilets. *See* Exhibit C at 54:10-12; 56:1-23; 51:3-17.

16. Even so, Plaintiff testified that he first observed and complained to SuperPac Production Supervisor and Assistant Manager of the Print Department, Dan Holdsworth ("Holdsworth"), about toilet paper being stuffed into the toilets in the bathroom, on or

around October 19, 2020 – four months into his employment. *See* Exhibit A at ¶13; Exhibit C at 36:4-9; Exhibit L at 7:21-25 (SuperPac Nighttime Shift Supervisor, Alberto Burgos's Deposition Transcript); Exhibit H at 12:16-13:1.

17. Holdsworth and SuperPac Night Shift Supervisor Alberto Burgos ("Burgos") had a meeting in which they discussed the incident and made an effort to watch out for it. *See* Exhibit H at 13:2-7.

18. Plaintiff did not characterize this event as racially motivated or state that it was only happening during his shift when complaining about it. *See* Exhibit B at 43:3-20; 126:14-17; Exhibit L at 8:6-9.

19. This was the only complaint Plaintiff recalls making about paper towel messes in the bathroom. *See* Exhibit C at 36:4-9.

20. Plaintiff next complained to Burgos about an incident of encountering urine in the bathroom just under three months later, sometime between November 2020 and January 13, 2021. *See* Exhibit A at ¶14, 22 and Exhibit L at 7:1-20.

21. Burgos checked the bathroom and found the urinal was overflowing. *See* Exhibit L at 7:1-20. He called maintenance, who fixed the urinal. *See id.*

22. Plaintiff did not characterize this event as racially motivated when complaining about it. *See* Exhibit B at 43:3-20; 126:14-17; Exhibit H at 17:16-20.

23. Plaintiff's next complaint did not occur until two months later, on or around March 19, 2021, and it was the first instance where he complained of encountering feces in the bathroom. *See* Exhibit A at ¶27 and Exhibit H at 18:4-14.

24. He again complained on or around March 22, 2021 about feces on the floor in the shipping bathroom. *See* Exhibit A at ¶22; Exhibit C at 53:9-16 (Plaintiff's Dep).

25. Both complaints were made to Holdsworth, who conveyed the complaints to management. *See id.*

26. Plaintiff did not characterize these events as racially motivated when complaining about them. *See* Exhibit B at 43:3-20.

27. Still, SuperPac took these issues seriously and promptly began an investigation, further detailed in Subsection C, *infra*.

28. They conveyed these findings to Plaintiff on or around March 29, 2021. *See* Exhibit M (SuperPac Memo from Faber to Randolph).

29. Though Plaintiff doesn't recall the exact time this meeting took place, he did recall the substance. *See* Exhibit C at 81:11-84:7.

30. Lastly, Plaintiff complained to Holdsworth and Faber on April 1, 2021 about a substance on the cafeteria door. *See* Exhibit A at ¶ 33; Exhibit E at SUPERPAC 101-102 and RANDOLPH 11 (Texts); Exhibit H at 19:12-18; and Exhibit B at 118:15-21.

31. SuperPac did perform an investigation. *See* Exhibit B at 118:15-120:5.

32. It found that the public location of the cafeteria door, its proximity to a security camera, and the fact that someone would have had to walk from the bathroom to the cafeteria with feces in their hands made it unlikely that the substance was feces. *See id.*

33. Plaintiff's own Complaint and the record developed in this case demonstrates that during Plaintiff's entire employment, there were only three complaints of feces incidents, with no conclusory evidence that the substance ***was*** in fact feces.

34. When Plaintiff attempted to provide justification for why he thought these events were racially motivated, he stated that he believed it only occurred during his shift because he

did not hear about it happening during other shifts from people at the plant. *See* Exhibit C

at 69:1-71:14.

### C.  SuperPac and Faber's Investigation into Bathroom Incidents

35. When Faber received Plaintiff's two complaints about the feces incidents in March 2021,

an investigation was immediately launched. *See* Exhibit B at 112:14-113:4.

36. SuperPac Safety and Environmental Manager, William Seitzinger ("Seitzinger"),

conducted a review of video surveillance and reported his findings on March 23, 2021 to

Faber and SuperPac Vice President and COO, Andrew Weir ("Weir"). *See* Exhibit F at

SUPERPAC 182-183.[1]

37. SuperPac also posted a public notice on the bathrooms regarding the incidents and their

pending investigation. *See* Exhibit N; Exhibit C at 66:10-15.

38. Faber conveyed the results of the investigation to Plaintiff in an in-person meeting with

herself, Plaintiff and Holdsworth. *See* Exhibit B at 114:18-115:10; Exhibit H at 26:19-

27:8.

39. Faber recalled this meeting likely occurred within a week after Plaintiff's complaints. *See*

*id.*

40. Faber relayed to Plaintiff that SuperPac performed an exhaustive search of the cameras to

see if they could pin the incidents to an individual, but that they were unable to do so.

This was true especially after realizing that the other main entrance to one of the affected

bathrooms did not have a camera, and therefore the cameras did not capture every

---

[1] Seitzinger's deposition was completed on September 22, 2022. SuperPac and Faber reserve the right to supplement
this with specific quotes from his testimony upon receipt of his deposition transcript.

individual who entered/exited the bathrooms during the affected windows of time. *See* Exhibit B at 115:11-116:11.[2]

41. Faber recalls that Plaintiff did not object to anything and seemed fine with Faber during the meeting, which indicated to her that he was appreciative SuperPac investigated the issue. *See* Exhibit B at 115:11-116:11.

42. Plaintiff also complained about "poop" jokes people were making toward him in the cafeteria, though he could not identify any individuals when he initially complained about it. *See* Exhibit B at 116:12-118:8; Exhibit O at 12:7-13:22 (SuperPac Production Manager, Mike Widmaier's Deposition Transcript).

43. In response, SuperPac reviewed surveillance video to determine who was in the cafeteria at the same time as Plaintiff, and SuperPac Production Manager Mike Widmaier ("Widmaier") interviewed each person. *See id*.

44. Each person indicated they loved Plaintiff, didn't know anyone who was doing anything maliciously toward him, and that they were upset for him. *See id.*

45. The results of that investigation were also conveyed to Plaintiff by Faber, in which she told him that "those employees out there think you're a rockstar. They love you. We don't know anybody who's doing anything maliciously toward you. You're very, very popular out there." *See* Exhibit B at 117:19-22.

46. Because Plaintiff texted Faber and Thomas on April 27 and 28, 2021 stating that that he was stressed after receiving no resolution to his complaints, Faber, Thomas and

---

[2] Thomas's deposition was completed on September 26, 2022. SuperPac and Faber reserve the right to supplement this with specific quotes from his testimony upon receipt of his deposition transcript.

Widmaier had a telephone conference with him on or around April 29, 2021. *See* Exhibit B at 121:4-123:8; Exhibit O at 39:8-11; and Exhibit E[3].

47. Faber reiterated the investigation that was conducted, how it was conducted, and when they initially met with him to discuss the results. Plaintiff responded, calling Faber a liar and he started screaming at her. *See* Exhibit B at 121:4-122:12; Exhibit O at 49:17-53:11; and Exhibit C at 133:16-134:3.

48. Widmaier then stepped in to convey the results of his own investigation into the poop jokes. *See* Exhibit B at 121:4-123:8; Exhibit O at 49:17-53:11[4].

49. At that point, Plaintiff calmed down and thanked Faber and Widmaier for their investigation. *See id.*

50. Faber also then generated a memo outlining Plaintiff's complaints, SuperPac's investigation and the conversations had with him. *See* Exhibit M.

51. She provided a copy of this memo to Plaintiff. *See* Exhibit M.

52. Other than Plaintiff's subjective belief, SuperPac found no evidence that any of these incidents were motivated by racial animus.

53. In fact, their investigations revealed that Plaintiff was well-liked by his co-workers. *See* Exhibit O at 53:2-8.

**D.  Plaintiff's Termination**

---

[3] Thomas's deposition was completed on September 26, 2022. SuperPac and Faber reserve the right to supplement this with specific quotes from his testimony upon receipt of his deposition transcript.
[4] Thomas's deposition was completed on September 26, 2022. SuperPac and Faber reserve the right to supplement this with specific quotes from his testimony upon receipt of his deposition transcript.

54. Plaintiff was terminated on April 30, 2021 on a phone call between himself, Faber, and Dale Thomas. *See* Exhibit A at ¶37; Exhibit B at 123:9-124:8; and Exhibit C at 135:14-19.

55. Plaintiff recalls being told by Faber that he was being laid off and "we're going to try to make this as soft as possible. *See* Exhibit C at 135:14-19.

56. SuperPac's reasons for terminating him were: the lack of need for his services and his screaming at Faber during the phone call to discuss the investigation a second time that took place in the days prior to his termination. *See* Exhibit B at 124:25-125:16.

57. Since Plaintiff's termination, no one has been hired to replace him. *See* Exhibit B at 108:1-3.

## IV.   <u>ARGUMENT</u>

### A.  Standard of Review

Federal Rule of Civil Procedure 56 mandates the entry of judgment against a party who fails to offer admissible material facts sufficient to establish every element essential to her case and on which that party bears the burden of proof. *Celotex Corp. v. Catr*ett, 477 U.S. 317, 322, 327 (1986) (summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'").  Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Notably, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex,* 477 U.S. at 327. As the moving party, SuperPac and Faber have the initial burden of showing the basis for its summary judgment motion. *Celotex*, 477 U.S. at 323. Although SuperPac and Faber bear the initial responsibility of asserting the basis for their motion, SuperPac and Faber are not required to negate Randolph's claims. Rather, SuperPac and Faber must point out the absence of material facts of record to support Randolph's case or, alternatively, offer affirmative material facts of record that demonstrates that Randolph cannot prove his case. *Lawrence v. Nat'l Westminster Bank* N.J., 98 F.3d 61, 69 (3d Cir. 1996).

Once SuperPac and Faber sufficiently support their summary judgment motion, the burden shifts to Randolph to go beyond the pleadings and present material facts of record to show that there is a genuine issue for trial. *Celotex Corp*., 477 U.S. at 324. Although the court must view all material facts in a light favorable to Randolph as the non-moving party, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Rather, a dispute must exist over a material fact. *Id.* In order for Randolph's claims to survive SuperPac and Faber's Motion for Summary Judgment, Randolph must come forward with specific, admissible and material facts supporting each element essential to his case; mere conclusory allegations or denials are not enough. *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

### B. Plaintiff's hostile work environment claims fail because Plaintiff cannot demonstrate that he suffered intentional discrimination because of his race or that any conduct was severe or pervasive. [5]

To prevail on his hostile work environment claims, Plaintiff must demonstrate that: (1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and

---

[5] "The PHRA is basically the same as the ADA in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" <u>Tielle v. Nutrition Grp.</u>, 810 F. App'x 160, 162 n.3 (3d Cir. 2020)

regular; (3) he was detrimentally affected by it; (4) a reasonable person of the same race in that position would have been detrimentally affected; and (5) there is *respondeat superior* liability. *See Selvato v. SEPTA*, 143 F. Supp. 3d 257, 265-66 (E.D. Pa. 2015). Randolph is unable to fulfill at least two critical elements of his hostile work environment claim.

To survive summary judgment on a race-based, hostile work environment claim, a plaintiff must show that he was subject to unwelcome harassment because of his race that was either severe or pervasive. Plaintiff cannot do so. For one, even if we presume that the matter in the bathrooms was feces, which is in dispute, such messes are not inherently indicative of racial animus. Plaintiff's only justification for tying the incidents to race is his belief that they occurred only during his shift. However, this is untrue. *See* Statement of Facts ("SOF") at §B. The record also establishes that Plaintiff was well-liked by his co-workers, and that the men's bathrooms at SuperPac are historically messy, no matter the shift. *See id.* Lastly, SuperPac did perform an investigation and found no evidence of racial animus. *See* SOF at §C.

Because there is no evidence of racial animus, Plaintiff's hostile work environment claim, at most, is based on a subjective belief, which is not sufficient under Title VII. *See Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 761 (E.D. Pa. 2011) (stating that "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."). As a result, Plaintiff's hostile work environment claim lacks merit and should be dismissed. The Court Should grant summary judgment on Plaintiff's hostile work environment claims under Section 1981, Title VII and the PHRA.

**C. SuperPac and Faber are entitled to summary judgment on Plaintiff's disability discrimination claims because he was not considered disabled under the ADA, and even if he was, SuperPac and Faber honored all of his requested leaves.**

The record adduced in this matter unquestionably demonstrates that Randolph cannot establish a claim pursuant to the ADA.  To prove a disability claim, Randolph must show that: (1) he was "disabled" within the meaning of the ADA; (2) that he was otherwise qualified to perform the "essential functions of the job, with or without reasonable accommodations by the employer," and; (3) that he has suffered an adverse employment action as a result of SuperPac's discrimination.  *Gaul v. Lucent Techs.*, 135 F.3d 576, 580 (3d Cir. 1998).

The ADA provides a framework for courts to use when determining if an individual is disabled.  A person qualifies as disabled if she: (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such impairment"; or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(1).

To begin, Randolph is not a qualified individual with a disability because he does not qualify as "disabled under the ADA"s definitions.  While the ADA Amendments Act of 2008 ("ADAAA") construes the definition of "substantially limits" broadly, "[n]ot every impairment will constitute a disability within the meaning of this section [of the ADAAA].  29 C.F.R. § 1630.2(j)(1).  The ADAAA "requires that the qualifying impairment create an 'important' limitation."  *Koller v. Riley Riper Hollin &* Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (quoting 29 C.F.R. pt. 1630 App. (2011)).

Randolph alleges that he has a history of cardiovascular disease and that he went out on Short Term Disability leave for a stress-related illness with elevated blood pressure between November 14 and December 10, 2020. *See* Exhibit A at ¶¶17-19. The medical records he produced in this action, and that he produced at the time of his Short-Term Disability Leave diagnosed him with a possible TIA. He was encouraged to control his blood pressure and diabetes. There are no documents produced by Plaintiff that have tied his medical issues experienced in 2020 to stress.

Plaintiff also does not specify in his Complaint or anywhere else in the record that any work activities were limited by his various ailments. He does not specify which limitations were significant enough to interfere his ability to work at SuperPac. He provides no support whatsoever that his alleged physical impairment substantially limited one or more major life activities. Moreover, Randolph has produced no medical records or any other objective evidence that tie his April 27 and 28, 2021 stress days to a disability, or characterize them as a request for an accommodation related to a disability. He even admitted that he did not obtain a diagnosis from a doctor with regards to these stress days. *See* SOF at §A. Plaintiff can hardly be terminated for a disability if his conditions do not qualify as such under the ADA. At any rate, it is undisputed that SuperPac granted Plaintiff's request for time off on April 27 and 28, 2021, and it did not deny his request for leave in November – December 2020. *See* SOF at §A.

Likewise, SuperPac did not regard Randolph as disabled. In order for Randolph to adequately plead that he was "regarded as" disabled under the ADA, he must establish that "he has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12101(3)(A). To support a "regarded as" claim under the ADA, Randolph must allege more than the fact that SuperPac was aware of Plaintiff's alleged medical conditions. *See Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013). ("'[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'" (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)).

SuperPac was aware that Randolph was allegedly stressed on April 27 and 28, 2021 but it cannot possibly be argued that knowledge of the stress caused Randolph's termination. Randolph's termination was related solely to his insubordination on the April 29 call with management and a lack of continued need for his services. *See* SOF at §D.

Randolph's reliance on his own subjective belief that SuperPac terminated him because of his alleged disability, without more, cannot withstand a motion for summary judgment. *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990); *see also Ellison v. BHBC Northwest Psychiatric Hosp.,* No. 11-5106, 2013 WL 1482199 (E.D. Pa. Apr. 9, 2013) (holding plaintiff's unsupported subjective opinion that defendant had history of discrimination "patently insufficient to oppose a motion for summary judgment") (citing *Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006)) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed."); *Dowling v. Citizens Bank*, No. 05-914, 2007 WL 2752178 (W.D. PA. Jan. 18, 2007) ("[L]argely unsubstantiated suspicions of ageism cannot sustain [the plaintiff's] burden on summary judgment"); *Strain v. Univ. of Pittsburgh Med. Ctr.*, No. 04-1660, 2007 WL LEXIS 951490 (W.D. Pa. Mar. 27, 2007) (holding plaintiff could not establish a prima facie case of age discrimination where she relied only on her "own speculation" that her age promoted the alleged adverse actions.). The record evidence shows Randolph was terminated because of his insubordination on an April 29 call with management and a lack of continued need for his services. *See* SOF at §D.  Under the circumstances here, Randolph cannot establish a causal link between his cardiovascular conditions and his termination, and so he cannot satisfy the third element of his prima facie case of disability discrimination.

**D.  Faber is entitled to summary judgment on Plaintiff's aiding and abetting claims because there is no evidence that SuperPac engaged in any discriminatory practice, let alone that Faber aided in or furthered a discriminatory practice.**

Section 955(e) of the PHRA forbids any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice. Stepp v. Fairpoint Commc'ns, Inc., CIV.A. 06-576, 2007 WL 4248559, at *8–9 (W.D. Pa. Nov. 30, 2007) (*internal citations omitted).* Courts have thus held that an individual defendant can be held liable under the PHRA in his personal capacity if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's discriminatory practices. *Id. citing  Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir.1996); *Marion v. City of Philadelphia,* 161 F.Supp.2d 381, 388 (E.D.Pa.2001); *Cohen v. Temple Physicians, Inc.,* 11 F.Supp.2d 733, 737 (E.D.Pa.1998) ( "[i]ndividual employees are not to be held liable ... unless a supervisory-employee can be shown to have aided and abetted the employer's discriminatory actions in violation of the PHRA").

Other than a conclusory allegation that Faber aided and abetted SuperPac's discrimination of Plaintiff because of his race and disabilities (Compl. ¶55), Plaintiff's Complaint is void of allegations that support this claim. Moreover, the record establishes that Faber did diligently investigate Plaintiff's complaints and reported those findings to Plaintiff. Additionally, she did not deny Plaintiff's requests for days off on April 27 or 28, 2021. There is simply no evidence to support Plaintiff's claim that Faber aided and abetted in any unlawful practice. Therefore, Plaintiff's claims against Faber should be dismissed.

**E.  The Court should grant summary judgment on Plaintiff's disability and race discrimination retaliation claims because he cannot make out a *prima facie* case.**

A *prima facie* case of retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (internal quotations omitted). In particular, Randolph cannot show (i) that he was disabled or engaged in activity protected under the applicable statute and (ii) that there is a causal link between his disability or the protected activity and his termination. *See Tielle v. Nutrition Grp.*, 810 F. App'x 160, 163 (3d Cir. 2020) (disability); *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 (D.N.J. 2019) (retaliation). Plaintiff cannot meet his burden.

1. **Plaintiff cannot show a causal link between his disability or alleged protected activity and his termination.**

When assessing whether a sufficient causal link exists, the Third Circuit uses two factors: temporal proximity and "the existence of 'a pattern of antagonism in the intervening period.'" *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2012) (internal quotations omitted). While there is no hard and fast rule, the Third Circuit has held that "a one-month gap can be too long, standing alone, to establish a *prima facie* showing of causation." *Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016).[6] And a pattern of antagonism requires more than one comment. *See, e.g., Tielle*, 810 F. App'x at 163.

While Randolph did complain about potentially racially motivated behavior, SuperPac investigated those complaints, found no evidence of racial animus, and informed Randolph of

---

[6] *See also Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) *(*recognizing that courts have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive); *Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (holding five-month time period between complaint and adverse action was insufficient to support inference of causation); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months is not unusually suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unusually suggestive).

these findings. There is no causal connection between Randolph's complaints of racial discrimination, which were resolved, and his termination. Additionally, the record is void of facts that prove Randolph's "stress days" are protected activity. Even if they were protected, SuperPac granted those requested days off. The record also establishes that the time off was wholly unrelated to the reason for Plaintiff's termination, which was his insubordination and a lack of continued need for his services. *See* SOF at §D. For these reasons, the Court should grant summary judgment and dismiss Plaintiff's retaliation claims under the ADA, Title VII, Section 1981, and the PHRA.

## V.    <u>CONCLUSION</u>

Based on the foregoing, SuperPac and Faber respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Submitted by:

*/s/ Courtney K. Mazzio*

**FREEMAN, MATHIS & GARY, LLP**
William H. Catto - Attorney I.D. No. 73251
Courtney K. Mazzio – Attorney I.D. No. 91367
1600 Market Street, Suite 1210
Philadelphia, PA 19103
Phone: 215-279-8072
wcatto@fmglaw.com
cmazzio@fmglaw.com
*Attorneys for Defendants*
SuperPac, Inc. and Lisa Faber

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I, Courtney K. Mazzio, attorney for Defendants, SuperPac, Inc. and Lisa Faber, hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment was electronically filed with the Court and served by electronically filing, on October 7, 2022, on all represented parties via ECF.

*/s/ Courtney K. Mazzio*

**FREEMAN, MATHIS & GARY, LLP**
William H. Catto - Attorney I.D. No. 73251
Courtney K. Mazzio – Attorney I.D. No. 91367
1600 Market Street, Suite 1210
Philadelphia, PA 19103
Phone: 215-279-8072
wcatto@fmglaw.com
cmazzio@fmglaw.com
*Attorneys for Defendants*
SuperPac, Inc. and Lisa Faber